**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**

**CORNELIUS A. HARTZ (01),**

        **Defendant.**

**Case No. 17-40067-01-DDC**

**MEMORANDUM AND ORDER**

Defendant Cornelius A. Hartz has filed a Motion to Suppress (Doc. 16). Mr. Hartz's motion asserts that law enforcement officers unlawfully detained him without reasonable suspicion of any criminal activity, thus violating his right against unreasonable seizures under the Fourth Amendment. As a consequence, Mr. Hartz argues that the court must suppress evidence about a firearm that law enforcement discovered during the allegedly unlawful detention as well as statements Mr. Hartz made to law enforcement officers.

The government has responded to Mr. Hartz's motion (Doc. 22). And, the court conducted an evidentiary hearing on December 4, 2017. After carefully considering the evidence and the parties' submissions, the court denies Mr. Hartz's motion.

**I.      Factual Background**

On April 5, 2017, around 3:00 p.m., Topeka Police Department ("TPD") Officers Justin Long and James Schneider were patrolling on their bicycles in Topeka, Kansas. Both officers were wearing TPD uniforms and riding bicycles bearing TPD markings. After the officers turned down an alley, they saw two men traveling southbound, some 30 feet ahead of them in the alley. One man—later identified as Allen Benson—was walking a bike down the left side of the

alley. The other man—later identified as defendant Cornelius A. Hartz—was on the right side of the alley, straddling a bike. Mr. Hartz was seated on the bike with his left foot on the left pedal and his right foot on the ground. The officers' body-camera recording shows that the two men were only a few feet apart from each other and moving together at the same speed down the alley.

The City of Topeka has adopted Standard Traffic Ordinance ("STO") § 68. Topeka Municipal Code § 10.15.010. Subsection (b) of this ordinance provides: "Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway." Subsection (c) of the ordinance provides: "Where neither a sidewalk nor a shoulder is available, any pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of the roadway, and, if on a two-way roadway, shall walk only on the left side of the roadway." The term "highway" includes alleys. See STO Art. 1 (defining "alley" as: "A street or highway intended to provide access to the rear or side of lots or buildings in urban districts and not intended for the purpose of through vehicular traffic"). Officers Long and Schneider both testified that they knew, based on their training, that Mr. Hartz was committing a traffic violation because he was walking his bicycle on the right side of the alley. But, the officers did not stop Mr. Hartz for this reason.

Instead, as the officers approached the two men, they saw Mr. Benson brandish a handgun and point it at the ground. Officer Long testified that Mr. Benson spoke in an elevated voice and hopped around. Officer Schneider drew his firearm, and both officers ordered Mr. Benson to drop the gun. Mr. Benson refused. Instead, he mounted his bicycle and rode off down the alley. Officer Schneider followed Mr. Benson.

Officer Long told Mr. Hartz to stop and get on the ground. He also told him that he was not under arrest and not in trouble. Officer Long testified that, when he stopped Mr. Hartz, he was not sure what Mr. Hartz and Mr. Benson were doing or what they were going to do, but he suspected they had engaged in some sort of criminal activity. Indeed, Officer Long recited under oath in a charging affidavit that he had detained Mr. Hartz "[n]ot knowing what criminal activity the two [men] had or were going to commit[.]" Exhibit B at 1.

After stopping Mr. Hartz, Officer Long saw that he was carrying a kitchen knife in his pocket. It was a butcher-style knife. Officer Long estimated that its blade was about eight inches long. Officer Long testified that a person lawfully may carry a knife like the one Mr. Hartz had on his person in Topeka, Kansas.

Officer Long also testified that he was frightened. He was worried that Mr. Hartz was armed with a gun since his apparent companion—Mr. Benson—had brandished a firearm in front of the officers. He also observed that Mr. Hartz appeared nervous and hesitant to follow his commands. Officer Long told Mr. Hartz to put his hands on the back of his head and not move. He then placed handcuffs on Mr. Hartz. Officer Long testified that he did this for safety reasons and because he wanted to gain control of the situation.

While Officer Long placed Mr. Hartz in handcuffs, Mr. Hartz told him that he had something else on him. Officer Long understood this statement to mean that Mr. Hartz was carrying a weapon or some other contraband. Officer Long asked Mr. Hartz what he had on him. Mr. Hartz responded that he had a gun. And, he told Officer Long that he was not allowed to have a gun because he is a convicted felon. Mr. Hartz advised that the gun was in the rear waistband of his pants.

Officer Long removed the gun from Mr. Hartz's waistband.  It was a .22 caliber revolver, and it was not loaded.  Officer Long then placed Mr. Hartz in custody for illegally possessing a firearm.  Officer Long never cited Mr. Hartz for a traffic violation, although he testified that he believes that he could have issued such a citation to him.

Based on these facts, the government has charged Mr. Hartz with violating 18 U.S.C. § 922(g)(1), for unlawfully possessing a .22 caliber revolver after being convicted of a crime punishable by imprisonment for a term exceeding one year.  Doc. 1.

**II.     Legal Standard**

The Fourth Amendment protects persons from "unreasonable searches and seizures."  U.S. Const. amend. IV.  "An investigative, non-consensual detention constitutes a seizure under the Fourth Amendment."  *United States v. Briggs*, 720 F.3d 1281, 1284 (10th Cir. 2013) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court established that a law enforcement officer "'may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to arrest.'" *United States v. Treto-Haro*, 287 F.3d 1000, 1004 (10th Cir. 2002) (quoting *Terry*, 392 U.S. at 22).  Under *Terry*, an investigatory detention is reasonable and, hence, constitutional if it is:  (1) "justified at its inception[;]" and (2) "reasonably related in scope to the circumstance which justified the interference in the first place."  *Terry*, 392 U.S. at 20.

An investigatory detention is justified at its inception if "specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime."  *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir. 1990).  "This requires the officer's detention to be based on 'something more than an inchoate and

4

unparticularized suspicion or hunch.'" *Briggs*, 720 F.3d at 1285 (quoting *Sokolow*, 490 U.S. at 15). "Nevertheless, 'the level of suspicion required for reasonable suspicion is "considerably less" than proof by a preponderance of the evidence or that required for probable cause.'" *Id.* (quoting *United States v. Lopez*, 518 F.3d 790, 799 (10th Cir. 2008) (quoting *Sokolow*, 490 U.S. at 7)). "The detaining officer needs only to articulate 'some minimal level of objective justification' for the detention." *Id.* (quoting *Sokolow*, 490 U.S. at 7).

When determining whether reasonable suspicion exists, the court looks to the "totality of the circumstances" known to the detaining officer "'rather than assessing each factor or piece of evidence in isolation.'" *Id.* (quoting *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011)). The court also must "'defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'" *Id.* (quoting *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001)). The court employs an objective analysis, asking "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." *Id.* (citations and internal quotation marks omitted).

### III.    Analysis

Mr. Hartz asserts that no reasonable suspicion existed to support Officer Long's investigative detention. Thus, Mr. Hartz contends, his detention was unlawful and violated his Fourth Amendment right against unreasonable seizures.

The government disagrees. It contends that Officer Long's detention of Mr. Hartz was justified for two reasons: (1) Officer Long had reasonable suspicion to believe that Mr. Hartz was committing a traffic violation because he was walking his bicycle on the right side of the alley, violating Topeka Municipal Code § 10.15.010; and (2) the totality of the circumstances

gave rise to a reasonable suspicion that Mr. Benson and Mr. Hartz had committed, or were in the process of committing, a crime. Because Officer Long's detention of Mr. Hartz was justified for the second reason, the court need not address the first argument.

The government asserts that Officer Long had reasonable suspicion to believe that Mr. Hartz was involved in criminal activity based on several facts: It appeared that Mr. Hartz was interacting with Mr. Benson in the alley when officers approached; Mr. Benson brandished a weapon, spoke loudly at the officers, and fled the scene; Mr. Benson violated Topeka Municipal Code § 9.35.101 by refusing to comply when the officers ordered him to drop his weapon; Mr. Hartz appeared to be Mr. Benson's associate; and Officer Long saw that Mr. Hartz was carrying a butcher knife. The court agrees that all of these facts, considered in their totality, give rise to an objective belief that Mr. Hartz had committed or was in the process of committing a crime.

Mr. Hartz asserts that the court cannot impute Mr. Benson's actions to him to justify the detention. Indeed, a defendant's "temporal and geographic proximity to the crime alone is not sufficient" to support reasonable suspicion against the defendant. *Romero v. Story*, 672 F.3d 880, 887 (10th Cir. 2012). And, a "'police officer cannot legally detain a person simply because criminal activity is afoot.'" *Id.* at 887–88 (quoting *United States v. Fisher*, 597 F.3d 1156, 1158–59 (10th Cir. 2010)). Instead, "'[t]he particular person that is stopped must be suspected of criminal activity.'" *Id.* at 888 (quoting *Fisher*, 597 F.3d at 1158–59).

Here, viewing the facts objectively, the court finds it was reasonable for Officer Long to suspect that Mr. Hartz was engaged in criminal activity because he appeared to be traveling and communicating with Mr. Benson. The officers testified that that they saw the two men together in the alley as they approached on their bicycles. And, the officers' video recording shows that Mr. Benson and Mr. Hartz were only a few feet apart, traveling the same speed down the alley

6

together.  It also appears in the video that Mr. Benson and Mr. Hartz were interacting with each other.  Based on these facts, it was reasonable for Officer Long to suspect that Mr. Hartz was an associate of Mr. Benson's.  Then, Mr. Benson brandished a weapon, shouted at the officers, and fled—refusing to follow the officers' commands.  Officer Long's detention of Mr. Hartz was justified because he reasonably suspected that Mr. Hartz had committed or was in the process of committing a crime with Mr. Benson—the person he appeared to be traveling with in the alley.  *Cf. United States v. Dennison*, 410 F.3d 1203, 1213 (10th Cir. 2005) (holding that officers "could reasonably infer a common purpose or enterprise between the two men" who were sitting together in a truck to support reasonable suspicion of the defendant's threat to officers justifying a protective sweep (citations an internal quotation marks omitted)).

Also, it was reasonable for Officer Long to sense a threat to his safety under these circumstances.  Mr. Benson had displayed a weapon at officers, and it was reasonable to suspect that Mr. Hartz also might have a weapon.  Indeed, Officer Long saw that Mr. Hartz was carrying a weapon in his pocket—a butcher knife with an eight-inch blade.  Considering all of these facts, it was reasonable for Officer Long to suspect that Mr. Hartz—the apparent companion of a person who had brandished a gun in front of the officers—was involved in criminal activity that had occurred or was about to occur.  Thus, Officer Long's detention of Mr. Hartz was justified.

Mr. Hartz also asserts that the officers lacked reasonable suspicion of criminal activity when Mr. Benson displayed his firearm because a person lawfully may carry a firearm openly in Topeka, Kansas.  During their testimony, both officers recognized that state law allows persons to carry firearms openly in Kansas.  But, Officer Schneider testified that he nevertheless found Mr. Benson's conduct suspicious.  He did not understand, in these circumstances, why one would brandish a weapon unless he was involved in criminal activity.  Officer Schneider is

familiar with the neighborhood the officers were patrolling.  It is a high crime area with known drug trafficking activity.  Officer Schneider believed that someone displaying a weapon in that neighborhood could be in the process of committing a crime.  The court finds Officer Schneider's testimony credible.  And, it suffices to support the officers' reasonable belief that Mr. Benson and Mr. Hartz had or were about to commit a crime.

Also, Mr. Hartz's argument confuses the act of carrying a weapon with what Mr. Benson did—brandished a weapon.  Here, Mr. Benson was not just carrying a firearm on his person.  As the officers approached—wearing TPD uniforms and riding bicycles bearing TPD markings—Mr. Benson pulled a firearm from his person and pointed it at the ground.  As Officer Schneider testified, he found it suspicious that Mr. Benson was carrying a weapon in his hand, especially in a high-crime neighborhood known for drug activity.  Considering Mr. Benson's conduct with the other circumstances—including that Mr. Benson spoke loudly to the officers, refused to obey their commands, fled from the scene, and appeared to be traveling with Mr. Hartz—it was reasonable for Officer Long to suspect that Mr. Hartz had committed or was in the process of committing a crime.

Finally, Mr. Hartz contends that Officer Long's charging affidavit shows that he did not have reasonable suspicion of criminal activity sufficient to detain Mr. Hartz.  The court disagrees.  That affidavit recites that Officer Long detained Mr. Hartz "[n]ot knowing *what* criminal activity the two [men] had or were going to commit[.]"  Exhibit B at 1 (emphasis added).  It does not state that Officer Long did not know *if* the two men were engaged in criminal conduct.  To the contrary, Officer Long attested that he detained Mr. Hartz because he suspected that Mr. Hartz and Mr. Benson *had committed or were going to commit* a criminal act.  He may have not known exactly what the criminal activity was, but an officer need not know what type

8

of criminal activity had occurred or is occurring to form a reasonable suspicion. Instead, an officer must base the detention on "specific and articulable facts" that "give rise to a reasonable suspicion a person has or is committing a crime." *Werking*, 915 F.2d at 1407. Officer Long's statements in the charging affidavit are consistent with this standard.

In sum, Officer Long's detention of Mr. Hartz was justified at is inception and lawful under the Fourth Amendment.[1]

### IV.     Conclusion

For the reasons explained above, the court denies Mr. Hartz's Motion to Suppress. The court sets this case for a status conference on **January 11, 2018 at 1:30 p.m.**

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Cornelius A. Hartz's Motion to Suppress (Doc. 16) is denied.

**IT IS SO ORDERED.**

**Dated this 14th day of December, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[1] The government's response to Mr. Hartz's motion asserts that Officer Long retrieved the firearm from Mr. Hartz's person during a lawful search and seizure. Mr. Hartz never argues that the search of his person and seizure of the firearm violated his constitutional rights. His motion only argues that the detention was unlawful, and thus, he contends, the court should suppress the firearm as a fruit of that unlawful detention. So that it is clear, the court agrees with the government's position. The government's evidence establishes that Officer Long lawfully seized the firearm during a search incident to arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) (holding that once a defendant admitted to possessing contraband, "the police clearly had probable cause to place [him] under arrest" and so long as "the formal arrest follow[s] quickly on the heels" of the search, it is "not . . . particularly important that the search preceded the arrest rather than vice versa."). While Officer Long was placing Mr. Hartz in handcuffs, Mr. Hartz told him that he was carrying a weapon and that he was prohibited from doing so because he is a convicted felon. With that admission, Officer Long had probable cause to arrest Mr. Hartz for violating 18 U.S.C. § 922(g)(1). Thus, Officer Long's search of Mr. Hartz's person was a lawful search incident to arrest.